**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**JOHNA LEE ANN DAVIS**                                                                                     **PLAINTIFF**

**VS.**                                         **CASE NO. 3:16CV00157 PSH**

**CAROLYN W. COLVIN, Acting Commissioner,
   Social Security Administration**                                                          **DEFENDANT**

**ORDER**

Plaintiff Johna Lee Ann Davis ("Davis"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Colvin") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the decision by the Administrative Law Judge ("ALJ") that she could perform her past relevant work was erroneous because: (1) the ALJ relied on testimony from a vocational expert without resolving a possible conflict between the expert's testimony and the *Dictionary of Occupational Titles*; (2) there is not substantial evidence to show Davis can perform sedentary work; (3) there is not substantial evidence to show Davis has no significant mental impairment; and (4) the ALJ's credibility analysis was flawed. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted on April 8, 2015. (Tr. 25-48). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Colvin's decision. 42 U.S.C. § 405(g).

*Administrative hearing:* Green testified she was 41 years old, with a high school education

followed by an eighteen month "career" course. (Tr. 31). Green lived with her sons, who were 10 and 16. She previously worked as a legal secretary, publisher relations worker, safety coordinator, and as an office manager. Green was let go from her last job, with her employer telling her "it just wasn't working." (Tr. 43). She collected unemployment for a few months after her last employment. Green stated she is unable to work full time because she cannot "sit for very long, stand for very long, walk very far due to my back and leg, buttocks, foot." (Tr. 38). Green had two back surgeries (a diskectomy and a disk implantation) in 2009 and 2010. She estimated she could stand for 30 minutes, then would need to sit down for 10 minutes, and that she needs a nap during the day. She testified she could not lift more than a gallon of milk. She takes pain medication and Prozac, and described a side effect of spending a great deal of time in the bathroom. Finally, she described being forgetful and struggling with concentration. A vocational expert was called, and the ALJ posed a hypothetical question containing the following assumptions: the claimant was Green's age, with her employment background, deals with mild to moderate pain, can only occasionally climb, stoop, crouch, kneel, and crawl, could perform sedentary work lifting no more than 10 pounds, standing/walking no more than 2 hours, with no more than a half hour at a time, and she would have the ability to get up and stretch and sit back down, with very limited overhead reaching (no more than 1/3 of the day). The vocational expert testified such a worker could perform the jobs of legal secretary, publisher relations worker, and office manager. (Tr. 27-47).

*ALJ's Decision:* In his May 2015[1] opinion the ALJ found Green had severe impairments of degenerative disc disease of the lumbar spine, status-post discectomy in 2009 and 2010, and

---

[1] Green's alleged onset date is March 29, 2013, making the relevant period for disability purposes from March 29, 2013, through May 18, 2015.

degenerative disc disease of the cervical spine. The ALJ found Davis had the residual functional capacity ("RFC") to perform sedentary work with the limitations which mirrored his question posed to the vocational expert. The ALJ found Davis's administrative hearing testimony was not entirely credible, citing the objective medical evidence, Davis's improvement with certain medications, and her testimony that she stopped working for reasons other than her impairments. (Tr. 16-18). The ALJ also noted that no medical source opined Davis was unable to work since her alleged onset date. Finally, the ALJ assigned "little weight" to the findings of the state agency physicians, who stated Davis could perform light work. Instead, the ALJ focused more heavily on the medical records of Davis's treating physicians.

**Claim 1: ALJ erroneously relied on testimony from a vocational expert without resolving a possible conflict between the expert's testimony and the *Dictionary of Occupational Titles*.**

The hypothetical question posed by the ALJ included a limitation for Davis to only occasionally reach overhead, which the ALJ defined as no more than 1/3 of the work day. (Tr. 46). The vocational expert testified Davis could perform three of her past jobs (legal secretary, publisher relations worker, and office manager). Davis contends it was error for the ALJ to rely on the expert's testimony because the *Dictionary of Occupational Titles* ("DOT") describes these jobs as requiring the ability to engage in frequent reaching. Davis cites *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630 (8th Cir. 2014) to support her argument. The *Kemp* case, however, does not demonstrate the ALJ erred in this instance. In *Kemp*, the ALJ found the claimant could not perform his past relevant work but that he could perform work identified by the vocational expert. "Without explanation" the ALJ noted the vocational expert's testimony was consistent with the DOT. *Id.* at

3

632. The job of check weigher, identified by the vocational expert in *Kemp*, required constant reaching, according to the DOT.  The ALJ had restricted the claimant to work with only occasional reaching.  Unlike the *Kemp* case, the ALJ here found Davis could perform three of her past jobs, and the record shows that those jobs, as actually performed, did not require frequent reaching.  To the contrary, Davis indicated one legal secretary job required occasional reaching, another legal secretary job required reaching one hour a day, and her publisher relations position required thirty minutes reaching in a day.  (Tr. 268-270).  Further, the ALJ did not conclude without comment, as in *Kemp*, that Davis could perform the jobs as required by the DOT.  In his decision, the ALJ stated, "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed."  (Tr. 19).  *Kemp* does not compel the conclusion urged by Davis.  *See, e.g., Jones v. Chater*, 86 F.3d 823 (8th Cir. 1996) (claimant not disabled if she can perform the actual functional demands and job duties of a past relevant job).  Substantial evidence supports the ALJ's treatment of the reaching requirements as they related to the past relevant work as actually performed by Davis.  There is no merit to this claim.

**Claim two: The ALJ erred in finding Davis can perform sedentary work**.

This is a challenge to the RFC determination made by the ALJ.  Initially, we note that the RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC.  Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  Here, the ALJ found Davis capable of

performing sedentary work with the numerous limitations already recited herein. These limitations primarily were related to the residual effects of Davis' earlier back surgeries. In reaching the RFC determination, the ALJ examined Davis' medical records in detail. In particular, the ALJ cited the medical evidence showing normal range of motion, normal gait and station, and no neurological deficits in May 2013, well after the surgeries. In addition, the ALJ observed that Davis returned to work in October 2012 and worked through her alleged onset date of March 29, 2013. The ALJ also noted that Davis indicated to her treating physician in October 2013 that she will try to start walking for at least 30 minutes four times a week and she was "doing well." (Tr. 440). Generally, her 2013 visits with her treating physician reflect a concern for her blood pressure, which was well controlled with medication. Otherwise, she is consistently noted to be doing well. (Tr. 426-455). The ALJ relied more heavily on the medical findings of physicians who actually examined Davis, and assigned "little weight" to the non-examining state agency physicians. (Tr. 18). The record supports this approach. Coupled with the discounted credibility, which will be addressed as claim four, the ALJ reached his RFC conclusion. We find substantial evidence supports the ALJ's RFC findings.

**Claim three: The ALJ erred in failing to find she had a significant mental impairment.**

The ALJ considered Davis' mental impairments (depressive disorder, pain disorder not otherwise specified, and adjustment disorder with depressed mood) both singly and in combination, determining that they did not constitute a severe impairment. In reaching this conclusion, the ALJ addressed the four broad functional areas commonly known as the "paragraph B" criteria. The ALJ found Davis had mild limitations in activities of daily living, social functioning, and with concentration, persistence, or pace, and that Davis had experienced no episodes of decompensation. The ALJ thoroughly discussed the findings of Dr. Samuel B. Hester ("Hester"), who performed an

5

April 2014 psychological consultative examination, diagnosing Davis with pain disorder and adjustment disorder and finding she could cope with the mental demands of basic work-like tasks. (Tr. 591-599). The ALJ gave Hester's opinion "some weight," but departed from Hester's findings in concluding Davis could cope with the mental demands of all work tasks rather than just basic work tasks. The ALJ's departure was based upon Davis' lack of any mental health treatment, the absence of any testimony to psychological limitations, and her improvement when her treating family practitioner prescribed Prozac in 2014. These are valid considerations, and the ALJ's consideration of these issues, and his overall assessment of Davis' mental impairments, is supported by substantial evidence. There is no merit in this claim.

**Claim four: The ALJ's credibility analysis was flawed**.

Davis' final argument is error by the ALJ in discounting her credibility. She contends the ALJ relied only upon an analysis of the objective medical evidence rather than considering any other of the pertinent factors set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), the seminal case on credibility determinations. While the ALJ did focus primarily on Davis' objective medical history, we find substantial evidence supports his credibility analysis. The ALJ indicated he considered all of the *Polaski* factors, including Davis' prior work history and observations of non-medical third parties. While the ALJ did not expand on all of the relevant factors, he did note that she worked through the alleged onset date, that she improved after starting a medication regimen, and she received unemployment benefits through 2014. (Tr. 16-18). These are all valid considerations reflecting upon Davis' credibility. Deference is typically given to an ALJ's credibility determination if the ALJ explicitly discounts the claimant's testimony, giving good reasons for doing so. *See, e.g., Boyd v. Colvin*, 831 F.3d 1015, 1021 (8th Cir. 2016). That is the case

here. There is no merit to this claim.

In summary, we find the ultimate decision of Colvin was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of Colvin is affirmed and Davis' complaint is dismissed with prejudice.

IT IS SO ORDERED this 11th day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE